406 So.2d 563 (1981)
STATE of Louisiana
v.
Glenn E. COLEMAN.
No. 81-KA-0772.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied December 14, 1981.
*564 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Michelle Roberts, Asst. Dist. Attys., for plaintiff-appellee.
Thomas J. Divens, Gretna, for defendant-appellant.
*565 DIXON, Chief Justice.[*]
Defendant, Glenn E. Coleman, was charged by a two count bill of information with attempted first degree murder and possession phencyclidine (P.C.P.) with intent to distribute. R.S. 14:27; R.S. 14:30; R.S. 40:967. By separate bills of information, Wendell Miller and Freddie Edwards were also charged with possession of P.C.P. with intent to distribute.[1] After a trial by jury, defendant was found guilty on both counts. He was sentenced to twenty years at hard labor for the attempted murder conviction, and to ten years at hard labor for the possession charge, sentences to run concurrently.
On August 10, 1979, officers of the New Orleans and Gretna Police Departments obtained a search warrant and went to the residence of Freddie Edwards. They knocked at the door and announced their presence. Miller opened the door slightly. Officer Larry Arthur identified himself as a police officer and told Miller that they had a search warrant. Miller then attempted to shut the door but the policemen forced it open. A number of gunshots were fired at the officers. Officer Arthur received a superficial gunshot wound in the abdominal area. Subsequently, defendant, Miller and Edwards were arrested.
The police then proceeded to search the residence pursuant to the search warrant. A plastic bag containing green vegetable matter, later identified as seventy-eight grams of mint leaves with P.C.P., and nine tinfoil packets containing mint leaves with P.C.P. were recovered. A .38 caliber revolver and a 357 magnum were also seized.
Defendant appeals his conviction, asserting five assignments of error.

Assignment of Error No. 1
In this assignment, defendant contends that the trial court erred in allowing two witnesses, Freddie Edwards and Wendell Miller, to invoke the Fifth Amendment privilege against self-incrimination and refuse to answer all questions pertaining to this case.
After the jury had been chosen, Edwards was called to the stand outside of the presence of the jury. Prior to direct examination by defense counsel, the judge asked Edwards if he had been advised of his rights in connection with testifying in the case at bar. Edwards responded in the affirmative. Defense counsel then began direct examination:
"Q. State your name and address.
A. Freddie Edwards, 544 Houma Blvd., now.
Q. What was you (sic) address on August 10, 1978-79?"
At this point, the trial judge interrupted to advise Edwards that if he answered one question about the case he would have to respond concerning the entire case. The judge continued:
"You have the right since you are not charged with this shooting and since you made the statements that you made in connection with this shooting to invoke the privilege of self incrimination under the Fifth Amendment.[2] The question asked you obviously has to do with the address."
He then asked Edwards what he wished to do and Edwards replied that he "prefer[red] to take the Fifth."

*566 "You refuse to answer any questions about this case whatsoever under you (sic) right of the Fifth Amendment? Is that what you are telling me?"
Edwards responded yes. Defense counsel then asked the court whether he could continue questioning the witness. On the court's suggestion, defense counsel stipulated that he would have asked Edwards about the whole case and that Edwards would have consistently invoked the Fifth Amendment privilege.
Following Edward's invocation of the privilege, defense counsel informed the court that another witness, Wendell Miller, had decided to invoke the privilege after consultation with his attorney. Miller was sworn in and the trial judge asked him whether he had decided to testify. In reply, Miller invoked the Fifth Amendment privilege. The court then instructed defense counsel to ask the first question.
"Q. Mr. Miller, how did that conversation between you and Mr. Hyman begin?
A. Well, my lawyer wasn't there and I just came up to him, just talked to him.
Q. You went up to him?
A. Yes.
Q. Where did you reside on August 10, 1979?
BY THE COURT:
Let me explain this to you. He is now asking you the first question that pertains to the case. If you are going to take the Fifth as you have told me, now is the time to do it."
Miller then stated that he wanted to take the Fifth Amendment. Defense counsel argued that Miller waived his right by answering the initial question regarding the conversation with Edward's attorney. The court responded that Miller had invoked the Fifth Amendment and that the court would uphold his exercise of that right. According to the trial judge, defense counsel stipulated that he intended to question Miller on the entire case and that Miller would invoke the privilege throughout the questioning. Defense counsel objected to the ruling. No stipulation, as such, appears in the record as intimated by the trial judge. Defense counsel did indicate to the court prior to Miller taking the stand that he was aware Miller was going to invoke the privilege.
The Fifth Amendment to the United States Constitution reads in pertinent part:
"No person ... shall be compelled in any criminal case to be a witness against himself."
This privilege against self-incrimination in the Federal Constitution is embodied in the Louisiana Constitution in the clause: "No person shall be compelled to give evidence against himself." Article 1, Section 16, Louisiana Constitution (1974). The principle espoused in the Federal Constitution was made applicable to the states in Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653, 661 (1964).
The protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951). As explained in Hoffman:
"The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himselfhis say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified,... and to require him to answer `if it appears to the court that he is mistaken.' " (Citation omitted). Hoffman, id.
Further, it is well settled that whereas an accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. State v. Wilson, 394 So.2d 254 (La. 1981); In re Parker, 357 So.2d 508 (La. 1978). Hence, it will be constitutionally required in virtually every case that the witness invoke the Fifth Amendment protection question by question. However, we have recognized certain unique instances where it is evident from the nature of the question and the position of the witness that an answer or explanation of a refusal to answer any question posed could result in an injurious *567 disclosure. See Hoffman v. United States, supra; State v. Darby, 403 So.2d 44 (La. 1981); State v. Wilson, supra.
In the instant case, defendant does not explain how testimony of either Edwards or Miller would have aided his defense. Because the FBI agents would be unavailable for trial, their testimony was videotaped beforehand. Full direct and cross-examination was conducted and Edwards' statements to the agents were read verbatim. This videotape was introduced by the defense at trial. Edwards' statements were favorable to Coleman in that Edwards admitted firing the shots and declared that Coleman had not handled a firearm at all on the evening in question. Therefore, all exculpatory remarks made by Edwards were put before the jury for their consideration. Although it is true the defendant was denied the right to cross-examine Edwards, defense counsel's stipulation that the privilege would be repeatedly asserted amounts to a realization that any testimony by Edwards would necessarily be incriminating. Indeed, although Edwards had been convicted on the possession charge, he had not as yet been sentenced. Therefore, his conviction was not final and he was in danger of potential exposure to further prosecution.
Defendant has also failed to prove that he has been prejudiced by Miller's refusal to testify. There is no indication that any testimony by Miller would have helped defendant's case. Moreover, Miller's testimony at Edwards' trial was also read to the jury at defense counsel's request. It is undisputed that he merely acknowledged his presence at the residence where the offenses occurred and claimed ownership of the P.C.P.[3] Once again, it appears that the only favorable statement made by Miller, namely, that he owned the drug, was put before the jury. Although Miller pleaded guilty to the charge of possession and sentence had already been imposed at the time of Coleman's trial, it cannot be assumed that he was no longer exposed to prosecution for other crimes arising out of the events on August 10, 1979. Thus, Miller was also place in reasonable apprehension of danger and was justified in invoking the protection of the Fifth Amendment.
Defendant's first assignment of error lacks merit.

Assignment of Error No. 2
Defendant contends that the trial court committed reversible error in failing to grant his motion to reset trial to a date when witnesses allegedly crucial to his case would be available to testify.
Special agents J. Ronald Hunter and Clifford H. Anderson were subpoenaed by the defense. In his brief, defendant states that he orally advised the court through his attorney that these witnesses would be out of town on the date set for trial and requested that the trial date be rescheduled.[4] Instead, the witnesses' testimony was preserved by videotape and played to the jury.
Defendant argues that the motion to reset should be treated as a motion for a continuance. Denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Haarala, 398 So.2d 1093 (La. 1981); State v. Durio, 371 So.2d 1158 (La. 1979). No such showing has been made.
This assignment lacks merit.

Assignment of Error No. 3
Defendant argues that the trial court committed reversible error in denying his motion for a mistrial when the prosecutor made purportedly prejudicial and inflammatory remarks during rebuttal argument.
In order to reverse a conviction on the ground that remarks made during the *568 trial were improper, this court must be convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979). We are not convinced that the remarks complained of, though arguably improper, so affected the jury as to preclude the jurors from reaching an independent decision based upon the evidence.[5]
This assignment lacks merit.

Assignment of Error No. 4
In this assignment, defendant submits that the trial court erred in qualifying Officer Andrew Haab as an expert in the field of packaging, trafficking and distributing P.C.P., urging that Officer Haab had insufficient credentials.
Competency of expert witnesses is a question of fact within the sound discretion of the trial judge, and his rulings on qualifications of experts will not be disturbed unless clearly wrong. State v. Walker, 394 So.2d 1181 (La.1981); State v. Williams, 386 So.2d 1342 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), cert. den. 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
Officer Haab has been a policeman for fourteen years, the last eleven years being spent with the narcotics division. He has participated in the investigation and arrest of persons for possession and distribution of P.C.P. on approximately two hundred fifty occasions. Officer Haab attended the D. E. A. drug school and has qualified as an expert in every section of Criminal District Court in New Orleans, in Baton Rouge, in Jefferson Parish and in federal court. He also worked undercover for three years and carried out several hundred drug purchases from various suspects. In light of his education and practical experience, we find that the trial judge did not abuse his discretion in qualifying Officer Haab as an expert.
This assignment lacks merit.

Assignment of Error No. 5
Defendant objects to the trial court's curtailment of defense counsel's examination of Officer Haab, a state witness. Officer Haab testified on direct examination that he participated in the execution of the search warrant and in defendant's arrest. On cross, the defense sought to elicit the facts upon which the search warrant was obtained, on the theory that the residence listed in the search warrant was not the defendant's home and thus defendant could not be in possession of items discovered in the refrigerator of that residence. The trial court ruled that the question posed was one of law, and, as such, impermissible.
The ruling of the trial judge as to the scope and extent of cross-examination should not be disturbed in the absence of an abuse of discretion. State v. Eaker, 380 So.2d 19 (La.1980). There is no showing of an abuse of discretion in this instance.
This assignment lacks merit.
Finding no merit in the assignments urged by the defendant, the convictions and sentences are affirmed.
NOTES
[*] Judges Remy Chiasson, Wallace A. Edwards and Elmo E. Lear, of the First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Before defendant's trial commenced, Miller pleaded guilty to the charge of possession with intent to distribute and was sentenced. Edwards was found guilty of attempted possession with intent to distribute; he had not yet been sentenced when defendant's case came up for trial.
[2] The statements referred to by the trial judge were made by Edwards to FBI agents in connection with a claim by Edwards that his civil rights had been violated during the arrest. In the first statement, Edwards admitted shooting a gun toward the door after police started shooting inside the house. In a later statement, Edwards stated that defendant did not handle a pistol at any time during the evening in question and that the only move made by defendant upon commencement of the shooting was to jump behind the sofa.
[3] Only Edwards' statements to the FBI agents are a part of the record. The transcript merely recites that the clerk read Miller's testimony to the jury; its contents were not included in the transcript. However, both the brief for the state and the defendant's brief are in accord that this was the substance of Miller's earlier testimony.
[4] No written motion to reset the trial date or to continue the trial appears in the record.
[5] The record reveals that defense counsel did not move for a mistrial following the first remark about which complaint is made. We are therefore only concerned with subsequent remarks made by the prosecution which portrayed defendant as a man whose livelihood was dealing in drugs.

Defendant also objects to the state's reference to defendant's failure to show that he did not live at the residence where the drugs were found. Despite defendant's assertion that this constituted a comment on the defendant's failure to testify on his own behalf, it is more properly viewed as a reference to the defense's inability to refute the state's case. Thus, it was proper argument. See State v. Sims, 346 So.2d 664 (La. 1977).