499 So.2d 1288 (1986)
STATE of Louisiana
v.
Albert PAUL.
No. KA-5527.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
Writ Denied March 20, 1987.
*1290 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans for appellee.
Elizabeth W. Cole, Tulane Law Clinic, New Orleans, for appellant.
Before BARRY, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Albert Paul, was indicted by an Orleans Parish grand jury for the July 27, 1985 second degree murder of his ex-wife, Erica Paul, a violation of La. R.S. 14:30.1. Defendant was arraigned on November 22, 1985 and pled not guilty. Trial was held on February 18, 1986 and defendant was found guilty as charged by a twelve (12) member jury. On February 27, 1986 defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

FACTS:
On July 27, 1985, defendant visited his ex-wife, Erica, at her mother's home from approximately 9:30 p.m. to 10:50 p.m. During the visit, defendant and Erica conversed in the kitchen out of earshot of Erica's mother. Around 10:50 p.m., defendant left the home. Erica left the home, purchased some chicken and returned. While she and her mother were eating supper, defendant returned and asked Erica to step outside onto the front porch. She complied. Hollis Spurlock, a neighbor, was sitting on his front porch directly across the street. He observed both defendant and Erica conversing. During the conversation, defendant pulled out a gun and fired at Erica. Erica turned to walk away and defendant fired two more shots. Spurlock then testified that defendant placed the gun to his head but the gun did not fire. Defendant then walked to his car, threw the gun into the trunk and drove off. Five days later defendant turned himself over to the police. He argued he shot Erica in self defense after she fired at him.
At trial, Loquita Santiago, defendant's girlfriend testified she witnessed the victim threaten defendant on prior occasions and point a gun at him. Defendant's mother testified that when she saw defendant in jail following his arrest, he had a head wound.
A coroner's report stating the victim died of two bullet wounds, and X-rays of defendant's skull were introduced into evidence. There was no testimony as to the significance of the skull X-rays.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in using incorrect criteria as a basis for its decision that defendant was not entitled to see or use a prior recorded statement made by a prosecution witness, and/or to the police report prepared by the chief investigating officer to whom defendant made a statement;
2) The trial court erred in refusing to allow Dr. Samuels, a forensic pathologist, to read defendant's skull X-rays to the jury.
3) The trial court erred in overruling defendant's objection to the prosecutor's argument that because the trial court ruled that defendant was not entitled access to Spurlock's prior statements in the police report, said report contained nothing favorable to defendant;
4) The trial court erred in overruling defendant's objection to the prosecutor's reference to defendant's prior convictions.

ASSIGNMENT OF ERROR 1:
Defendant alleges that the trial court used improper criteria to determine whether defendant had a right to the police report which contained prior statements *1291 made by the state's primary witness, Hollis Spurlock. Following Spurlock's testimony, defendant requested that the trial judge examine in camera Spurlock's prior statements contained in the police report. Defendant requested the court review the report for inconsistent statements and "anything that could aid us in cross examination". The trial judge interpreted the request to be one "to see if any of the testimony, as reported by the police officers in their report is different than what he [Spurlock] testified to today," i.e., for inconsistencies, or "anything that is exculpatory that should have been turned over to you ...." [referring to the U.S. Supreme Court holding in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] The court refused to review the report for anything which might aid in cross examination. Defendant argues that his fourteenth amendment due process right to cross-examine prosecution witnesses requires that in addition to exculpatory statements or statements in direct conflict with his [Spurlock's] testimony, he [defendant] is entitled to a review for "any inconsistencies which would create a reasonable doubt as to Spurlock's credibility." We disagree.
A defendant's right to a fair trial mandates that the prosecution disclose to the defense evidence which is favorable to the defendant if such evidence is material to his guilt or innocence and/or punishment. Brady v. Maryland, supra; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This holding has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information, and the subject matter of the request is material, or if a substantial basis for claiming materiality exists it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting it to the trial judge for an in camera inspection. United States v. Agurs, supra; State v. Ates, 418 So.2d 1326 (La. 1982); State v. Davenport, 399 So.2d 201 (La.1981).
The cited jurisprudence modifies the discovery articles of the Code of Criminal Procedure to the extent that the due process requirements of a fair trial must be satisfied. We conclude in this case that the statements sought by defendant, in order to be discoverable, must be inconsistent with that given at trial and material to the issue of guilt or innocence. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." U.S. v. Agurs, supra, 427 U.S. at 110, 96 S.Ct. at 2400. The sought after information must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt, irrespective of the additional evidence, there is no justification for a new trial. However, if the verdict is already of questionable validity, additional evidence of minor importance might be sufficient to create reasonable doubt. U.S. v. Agurs, supra.
We have inspected the police report containing the statements Spurlock gave the officers on the night of the incident. Spurlock testified at trial that he saw the defendant put the gun to his head, but it did not fire. He also testified he told the police about this. Although the report does not mention this fact, the statements that are contained therein are totally consistent with Spurlock's testimony. After review of the whole record we conclude that the omission in the police report of that portion of Spurlock's testimony concerning the apparent suicide attempt is not so materially inconsistent as to warrant a new trial. There is no requirement that provides for disclosures of any information that might aid in cross examination, only that which is inconsistent and material to the issue of guilt or innocence.

*1292 ASSIGNMENT OF ERROR 2:
Defendant alleges the trial court erred in not allowing Dr. Samuels, an expert in forensic medicine, to testify to the significance of certain anomalies that appeared in defendant's skull x-rays. Defendant attempted to question Dr. Samuels as to what the anomalies suggested  alleged bullet fragments in his skull, evidence which would add support to his contention that he acted in self-defense. The trial judge allowed the x-rays to be admitted into evidence but would not allow Dr. Samuels to give his opinion as to what the anomalies were. The court's concern over the speculative nature of such opinion evidence is well founded. LSA R.S. 15:466 provides:
"The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The competency of an expert witness is a question of fact within the sound discretion of the trial judge, and his rulings on qualifications of experts will not be disturbed unless clearly wrong. State v. Michel, 422 So.2d 1115 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981). Defendant concedes that Dr. Samuels was neither the technician responsible for taking the x-rays nor the treating physician nor was he present when the x-rays were taken. Dr. Samuels could do no more than testify that bullet fragments might appear as spots similar to those alleged "anomalies" in defendant's skull x-rays. He could not have testified whether the anomalies were in fact bullet fragments, the age of the injury or any other fact relative to the taking of the x-rays or how they related to the crime. In light of these facts and in the absence of any evidence to establish that the x-ray technician and treating physician were unavailable, we find no abuse of discretion in the trial court's limiting Dr. Samuel's testimony.
The assignment of error is without merit.

ASSIGNMENTS OF ERROR 3 & 4:
Defendant argues his conviction and sentence should be set aside because he was denied a fair trial when the prosecutor made certain remarks during closing argument referring to the unavailability of Spurlock's testimony and defendant's prior criminal record. The remarks by the prosecutor are as follows:
"Now, let me tell you about the second instance about smoke from the defense. When Mrs. Cole, during the course of the trial, made a motion for an in camera inspection, she wanted the judge to look at the statement of Hollis Spurlock. Fine. We gave the judge the police report. We gave him the statement. He inspected it and what came out? Nothing. Because they got everything that they were entitled to.
Now the law will tell you that you can't look at a person's convictions and say, `Well, just because that person was guilty of auto burglary and just because that person was found guilty of being a convicted felon in possession of a firearm, you can't say because he did these two things that he's guilty of this.' But you can take it into consideration. You can look at it and say, `Well, Albert Paul, you pled guilty to simple burglary and the State gave you a break. You were put on probation. And what did you do?' And when he was put on probation, the judge told him that he just got a felony conviction and he could have gotten ten years....
And what did he do? He got his break and he went and got a gun. So he goes from probation to this. Convicted felon in possession of a firearm and he got five years. And he goes from that to being a murderer. It's a progression. You've seen it. And that tells you what kind of person he is."
A review of the record clearly shows the jury was present at the time of the court's ruling that defendant was not entitled to Spurlock's prior statements, and therefore were well aware of that fact. The prosecutor's remarks do not reflect *1293 any more than what the jury already knew nor do they infer the judge believed Spurlock.
All of the prosecutor's remarks concerning defendant's prior criminal record were based on testimony brought out by the defense during trial. During the opening statement, defense counsel told the jury defendant spent time in prison for being a convicted felon in possession of a firearm. Defense counsel questioned the victim's mother regarding the concealed weapons charge and defendant's mother regarding his burglary conviction. We do not find the prosecutor's remarks improper. The evidence commented on in closing argument was already before the jury by virtue of defendant's witnesses; consequently, the comments were permissible. La.C.Cr.Pro.Art. 774.
As to the prosecutor's comments that defendant's prior criminal record "tells you what kind of person he is", there is no showing, nor do we find, that this statement influenced the jury's verdict.
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.