573 So.2d 1233 (1991)
STATE of Louisiana
v.
Donald SMITH.
No. 89-KA-2048.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
Writ Denied April 11, 1991.
*1234 Harry F. Connick, Dist. Atty., Karen L. Rosenberg, Student Practitioner, Jack Peebles, Supervising Atty., Asst. Dist. Atty., New Orleans, for State of La.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Donald Smith.
Before BYRNES, WARD and ARMSTRONG, JJ.
WARD, Judge.
Arguing two assignments of error, Donald Smith seeks reversal of his conviction for possession of crack cocaine, R.S. 40:967C, and sentence of five years at hard labor. We affirm the lower court judgment.
The trial testimony shows that while officers Chenevert and Worthy were patrolling the Florida Housing Project in November 1988, they noticed a gathering of approximately 8 to ten males in a grassy area in the rear of 2620 Congress Drive. Suspecting some illegal activity in this area known as "cocaine alley", the Officers drove their vehicle toward the individuals, at which time the group began to run with the exception of the defendant and another male, who remained standing in a doorway. As the officers approached the defendant, Officer Chenevert noticed him drop a small plastic bag behind his leg. While frisking the defendant for weapons, Chenevert retrieved the plastic bag and observed small white rock like substances which later tested positive for cocaine.
Officer Worthy testified that the time defendant dropped the cocaine, Worthey observed another man standing near the defendant, who also dropped an object which later proved to be a packet of ritalin tablets.
Donald Smith testified that on the date of his arrest he was on his way up to his girlfriend's second floor apartment in the housing project when a man whose last name is Murray and another man, George Duracell, both ran past him going upstairs in the house. Smith stated Murray slipped, dropping a package which Officer Worthy picked up while Duracell threw a bag of cocaine off the third floor. Continuing, Smith denied any involvement with the drugs and told the jury that Duracell gave the Officers an alibi and was then released. However, Duracell was later arrested on other charges and placed in jail with Smith, during which time Duracell allegedly agreed to admit to his possession of the drugs, thereby exonerating Smith. The jury also heard Smith admit his record of convictions for purse snatching, burglary, attempted burglary, crime against nature and rape of another inmate.
Prior to Smith's testimony, the defense called George Duracell whereupon the Court advised Duracell out of the presence of the jury, of his fifth amendment rights. Duracell refused to testify. Following Smith's testimony, the Court allowed Duracell to take the witness stand before the jury. The Court again advised Duracell of his privilege against self-incrimination and again he refused to testify. The defense *1235 asked no questions and the Court refused to allow the State to question Duracell.
In his first assignment of error Smith argues trial court error in its denial of his motion to suppress the physical evidence. Smith contends the police officers did not have reasonable cause to approach him or instigate an investigatory stop, therefore, the evidence seized as a result of that stop must be suppressed.
Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La. App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, 441 So.2d 1195 (La.1983) cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
La.C.Cr.P. art. 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain the individual. State v. Belton, supra.
A person's liberty and privacy are not violated simply because a police officer attempts to talk with him as long as that individual is free to disregard the questioning and walk away. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Lanter, 391 So.2d 1152 (La.1980). When an individual is actually stopped without reasonable cause or if a stop is imminent, the "right to be left alone" is violated, resulting in an illegal seizure. State v. Belton, supra.
When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. State v. Andrishok, 434 So.2d 389 (La. 1983). If however, property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference then such property may be lawfully seized. State v. Wheeler, 416 So.2d 78 (La.1982). In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. State v. Andrishok, supra. It is only where a citizen is actually stopped without reasonable cause or when that stop is imminent that the right to be left alone is violated thereby rendering unlawful any resultant seizure of abandoned property. State v. Chopin, 372 So.2d 1222 (La.1979).
Officer Worthy testified during the hearing on the motion to suppress that he and Officer Chenevert were merely approaching Smith in order to inquire whether he lived in the housing project when Smith threw down the contraband. Officer Worthy stated he was approximately 20 feet from the defendant when Smith discarded the cocaine.
Although Officer Chenevert did not testify during the hearing on the motion, he testified at trial that he did bring the police car as close "as possible before getting out of the car", and also admitted the closeness of the vehicle may have been "somewhat intimidating" to Smith. See Michigan v. Chestnut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).
Nevertheless, both officers testified that they never spoke to Smith prior to the time he dropped the cocaine, never drew their guns nor engaged the siren on the police vehicle. Moreover, both officers specifically *1236 stated the encounter occurred in a heavily trafficked drug area. These facts do not show that these police officers intruded upon Smith's privacy interests at the time he discarded the contraband.
This assignment is meritless.
Finally, Smith assigns as error the trial court's advising the defense witness, George Duracell, that he was allowed to invoke a blanket Fifth Amendment privilege. This assignment is without merit.
In State v. Brown, 514 So.2d 99, 110-111 (La.1987), cert. den. Brown v. Louisiana, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988), the Louisiana Supreme Court stated:
We have held that the proper exercise of the privilege for a witness, as opposed to a defendant:
requires that the witness take the stand and answer the questions put to him, save for those instances were it is "evident from the implication of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman v. United States [341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) ] supra.

State v. Wilson, 394 So.2d 254, 258 (La. 1981).
In Wilson, we reversed the defendant's conviction for distribution of heroin on the ground that the trial court improperly refused to require a witness who was called by the defendant and who claimed a Fifth Amendment privilege to assert the privilege on a question by question basis. There was no indication in Wilson of why the witness had any basis to fear self-incrimination, and under those circumstances we held that he should be required to take the stand and assert the privilege only after and in response to successive particular questions.
However, we have subsequently held that it is not necessary for a witness charged with participating in the same crime for which the defendant is being tried to assert the privilege on a question by question basis when it is apparent that the witness will be asked to testify only regarding matters which could be expected to require the invocation of the privilege. In State v. Darby, 403 So.2d 44 (La.1981), cert. denied, 454 U.S. 1152, 102 S.Ct. 1022, 71 L.Ed.2d 308 (1982), the trial judge allowed the witness to invoke the privilege as to all questions concerning the evening of the murder for which the defendant was charged. He did not require the assertion of the privilege on a question by question basis. The witness had been separately charged for his alleged participation in the same murder. Upholding the trial court's decision to allow the invocation of the privilege in this fashion, we held that "[i]n this factual context, no purpose would have been served in requiring a question by question assertion of Gautreaux's privilege." 403 So.2d at 48-49.
In State v. Edwards, 419 So.2d 881 (La. 1981), we held that a question by question assertion of the privilege was not necessary in the case of two witnesses charged with first degree murder, the same crime for which the defendant was being tried. We found that questions to those witnesses regarding the night of the murders would place them "in a position where refusal to answer or an explanation of that refusal could result in injurious disclosures." 419 So.2d at 892. We therefore concluded that "[o]nce the trial judge determined that they would refuse to answer any questions concerning the murders, it was proper for him not to allow the witnesses to be called before the jury." Id.

Similarly, in State v. Coleman, 406 So.2d 563 (La.1981), we declined to require the question by question assertion of the privilege by two witnesses charged with crimes related to the offenses for which the defendant was being tried. In so doing, we cited the rule that question by question responses are not required "where it is evident from the nature of the question and the position of the witness that an answer or explanation of a refusal to answer any question posed *1237 could result in an injurious disclosure." Id. at 566. It also seemed obvious that any testimony by either witness would be self-incriminating.
Smith argues his case is distinguishable from Coleman, supra and other cases in that the defense witness, George Duracell, was never charged with the crime. Additionally, Smith points out that the defense in Coleman succeeded in having the witness' statements read into the record. Nevertheless, this Court in State v. Savoy, 537 So.2d 246 rejected a similar argument and stated: "[A]lthough the witness ... was not charged with the same crime, the evidence introduced by the defense implied that he was the perpetrator. Defense counsel placed the witness in the same position as if he had been accused of the crime. Any questions asked would have dealt directly with the issue of his guilty or innocence." Id. at 249-250.
The principle of Darby, Edwards, Coleman and Brown applies when the prospective witness has been accused of the crime by the defense. No purpose is served by requiring the witness to invoke the privilege against self-incrimination on a question by question basis since "either an answer or an explanation of a refusal to answer could result in disclosures injurious to the witness." Brown, supra, at 111.
Furthermore, not only did Smith testify extensively that the contraband belonged to George Duracell, but he also informed the jury of the inculpatory statement allegedly made by Duracell. Moreover, the trial judge also allowed the jury to be informed of the defendant's desire to have Duracell testify and the latter's refusal to do so on the grounds that it may incriminate him.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.