ARMSTRONG, Judge.
Defendant, Carol S. Carson, was charged by bill of information with cruelty to a juvenile, a violation of LSA-R.S. 14:93. She pled not guilty at her arraignment. After a trial, a six member jury found her guilty as charged. She was sentenced to serve ten years at hard labor with credit for time served and with court costs waived. She was ordered to serve this sentence consecutive to the two concurrent six-month sentences imposed for her misdemeanor violations of LSA-R.S. 14:34.2, simple battery on a police officer, and LSA-R.S. 14:108, resisting arrest. Due to an outburst at the sentencing hearing, she was also found guilty of contempt of court and sentenced to serve six months in Parish Prison to run consecutive to the ten-year sentence and the six-month sentences.
Beatrice Washington, a retired nurse, testified at trial that on January 19, 1990, the ten-year old victim and daughter of defendant, Asante Carson, came to her house to buy cigarettes for defendant. Washington, who sells candy for her Bible study class, did not have any cigarettes, so Asante departed. About ten minutes later, Asante returned with a bleeding eye. Washington said Asante told her that her mother beat her because she had not returned with the cigarettes. As Asante did not want to go home, Washington telephoned the police.
Officers Farrell Anthony St. Martin and Geraldine Prudhomme responded to the call. They testified they found the child crying, “sort of hysterical” and refusing to go home. They also testified that, in addition to her bruised and bleeding eye, the little girl had bruises around different parts of her body. Due to the condition of the child and her emotional state, the officers decided to call the Child Abuse Division.
The officers also testified that ten to fifteen minutes after their arrival Carson appeared “like a storm trooper” looking for her daughter. Officer St. Martin described her demeanor as loud and irrational. He thought she might become violent. Officer Prudhomme testified that Carson wanted to take her daughter home, but they would not let her and warned her they were investigating the child’s condition.
When Carson left to return to her residence, Officer St. Martin followed her on foot and Officer Prudhomme followed in *578 the car with the child. The officers described Carson’s home as filthy and testified that it looked like it had been ransacked. They observed Asante’s two younger brothers, ages one month and one year, and five-year old sister. They both testified Asante showed them a barrel of a gun and a board that she claimed her mother used against her. As she did so, Carson became verbally abusive to the officers and told them, “don’t listen at her, she’s a mental patient. I can call her doctor.”
At some point, the child abuse unit arrived as did at least two of Officer Prud-homme’s ranking officers. Officer Prud-homme testified that when she was questioning Asante, Carson struck her (Prud-homme) on the back of the head. She said it took both of her ranking officers, plus two additional officers, to subdue Carson and to get her handcuffed and in a police vehicle. Thereafter, Officers St. Martin and Prudhomme transported Carson to the police station.
Detective Kirk Bouyelas of the Child Abuse Section for the New Orleans Police Department also testified at Carson’s trial. He said Asante identified certain objects in the house which she claimed had been used to beat her. The items included two pieces of a 2 X 4, a broken piece of a broom stick and a broken BB gun. Detective Bouyelas confiscated these items. He testified about the marks he observed all over Asante’s body. Further, he said her left eye was cut and bleeding and she had a poorly healing cut on her finger. He said the child told him her mother had cut her finger with a knife on Martin Luther King, Jr. Day (January 15, 1990).
Asante testified that on the day the police took her mother away, her mother had sent her to “Compack” to get cigarettes. However, the store would not sell the cigarettes on credit so her mother sent her to Washington’s house. When she returned home and informed her mother that Washington does not sell cigarettes, her mother punched her in the eye and it bled. Asante also testified that her mother beat her with boards, cords and sticks; burned her on neck with a cigarette; and, on Martin Luther King’s birthday, cut her finger with a knife.[1] She said her mother beat her because her mother thought she practiced voodoo, but Asante said she did not know what voodoo is.
Dr. Curtis Turner, the pediatrician who examined Asante after the police took her into custody, was the state’s concluding witness. He testified that when he examined Asante in the children’s emergency room on January 19, 1990, she had multiple healing wounds and multiple scars on her back and her extremities, including one with the classic loop mark caused by an object like a looped belt or cord. He counted the wounds and found forty-nine. Dr. Turner testified she had fresh bleeding around her left eye and the lining over the white part of her left eye was scratched. He also testified she had a laceration on her right hand on the palmer aspect, the fifth digit, which should have been sutured within twenty-four hours of sustaining the injury.[2]
Darlene Shelton, an attorney for the New Orleans Legal Assistance Corporation, testified on Carson’s behalf. She testified that she had previously represented Carson in an unrelated civil matter. During that time, Shelton said she had the opportunity to observe Carson interact for several hours with her children at her office. Based upon this encounter, Shelton testified that Carson did not appear to be abusive to her children.
The record reveals no errors patent.
In her first assignment of error, Carson claims the sentence imposed, to serve ten years at hard labor as authorized by LSA-R.S. 14:93, is excessive.
*579 A constitutionally excessive sentence is one that is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless and needless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. den., Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985), reh’g den., 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985). To determine if a sentence is unconstitutionally excessive, an appellate court reviews the reasons given by the trial court for imposing a particular sentence. State v. Davis, 449 So.2d 452 (La.1984). The trial court’s sentencing decision must be based upon the criteria set forth in LSA-C.Cr.P. art. 894.1, which further requires the court to specify the factors it has considered in imposing a particular sentence.
While the trial judge need not articulate every aggravating and mitigating circumstance presented in C.Cr.P. art 894.1, the record must reflect that the court adequately considered its guidelines when particularizing them to the defendant. State v. Guiden, 399 So.2d 194 (La.1981), cert. den., Guiden v. Louisiana, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). The sentencing record should reflect that the trial court considered the personal and past criminal history of the defendant and the seriousness of the crime. State v. Quebedeaux, 424 So.2d 1009 (La.1982), after remand, 446 So.2d 1210 (La.1984).
A review of the sentencing transcript indicates the trial court adequately complied with the sentencing guidelines of C.Cr.P. art. 894.1 by particularizing them to Carson. The court noted Carson had a prior conviction for armed robbery in 1975. It reviewed the facts of this case, summarizing the injuries Carson inflicted on her ten-year old daughter. The court also reviewed the list of mitigating factors, finding that none applied. The court specifically found that Carson posed a serious threat to the community and to her children. The court concluded that the imposition of a lesser sentence would deprecate from the seriousness of the crime of cruelty to a juvenile.
As the trial court complied with the standards of C.Cr.P. art. 894.1, the sentence imposed cannot be set aside in the absence of an abuse of the trial court’s wide sentencing discretion. State v. Quebedeaux, supra. To determine whether the trial court abused his discretion and imposed an unconstitutionally excessive sentence, it is appropriate to compare the sentence imposed to sentences imposed in other cases with similar circumstances and involving defendants with similar characteristics. State v. Brogdon, supra.
Accordingly, comparing Carson’s sentence to those imposed in State v. Gray, 502 So.2d 1114 (La.App. 4th Cir.1987) and State v. Davis, 485 So.2d 981 (La.App. 4th Cir.1986), writ den., 488 So.2d 1019 (La.1986), cases involving defendants with similar characteristics who were convicted of violating LSA-R.S. 14:93 under similar circumstances, we find the defendants in those cases also received the maximum ten-year sentence. In ■ Gray, this court upheld the ten-year maximum sentence when defendant was convicted for beating her six-year old daughter with a hammer and a chair. In Davis, this court upheld the ten-year maximum sentence when defendant was convicted for placing her child in scalding water, causing the child to receive second degree burns.
Herein, the trial evidence reveals that, because the child was unable to get her cigarettes, Carson punched her ten-year old daughter in the eye causing it to bleed and tearing the lining of her eye. The evidence also reveals that the child had a total of forty-nine wounds on her body. The child testified that Carson beat her with the BB gun, a broomstick and a 2 x 4, cut her finger with a knife and burned her neck with a cigarette. These facts are on par with those recited in Gray and Davis and indicate the trial judge did not abuse his discretion or impose an unconstitutionally excessive sentence.
This assignment of error is without merit.
In her second assignment of error, Carson claims the trial court impermissibly *580 restricted her counsel’s cross-examination of the victim.
In 1989, Asante was hospitalized as a result of an automobile accident in which her uncle was killed. On cross-examination, defense counsel asked Asante various questions about her hospitalization with the apparent intention of impeaching her by showing inconsistencies between the answers she gave on cross-examination and the information contained in her hospital records. (See assignment of error three, infra.) The court allowed a number of the questions, while sustaining the state’s objections to others.
Carson contends the trial court erred in limiting her counsel’s cross-examination of the victim as to her emotional and mental condition. She claims that, particularly at pages 67-69 of the trial transcript, the trial court consistently sustained objections to defense counsel’s attempts to elicit the child’s testimony about her propensity to harm herself, to fabricate stories and to behave aggressively towards others. Carson contends that the child’s testimony would have shown that she was injured as a result of her own actions and not as a result of Carson’s actions.
LSA-C.E. art. 611(B) provides that a “witness may be cross-examined on any matter relevant to any issue in the case, including credibility.” Further, LSA-C.E. art. 607(C) provides the following:
C. Attacking credibility intrinsically.
Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or the accuracy of his testimony.
According to comment (h) to article 607, however, paragraph C is subject to the balance recognized by LSA-C.E. art. 403,[3] and “is not intended to restrict the discretion of the court to exclude marginally probative lines of questioning when they become redundant or unduly time-consuming, or are offset by the danger of unfair prejudice, confusion of the issues, or misleading the jury.”
The record shows the trial court sustained the following objections during defense counsel’s cross-examination of the victim:
BY DEFENSE COUNSEL:
Q. Do you remember in the hospital ever giving a toy to one of your friends and then having one of your friends go back and try to get it back from you?
BY THE STATE:
Objection, your Honor.
BY THE COURT:
I’ll sustain that. I will sustain that.
BY DEFENSE COUNSEL:
Q. Do you remember in the hospital when they some times asked you questions?
A. Yes.
Q. Do you remember someone asking what was some of the things you needed to work on?
BY THE STATE:
Objection.
BY THE COURT:
I will sustain that.
BY DEFENSE COUNSEL:
Q. Do you ever remember saying that one of the things you needed to work on was not killing yourself?
BY THE STATE:
Objection, your Honor.
BY DEFENSE COUNSEL:
Your Honor, I’ll make an offer of proof in open court or at the bench.
* * * * * *
BY THE COURT:
When do you allege this statement was made, ma’am?
BY DEFENSE COUNSEL:
During part of the year that the State also alleges this behavior relative to my client was taking place.
*581 BY THE COURT:
All right. I’m going to sustain the State’s objection and note an objection for the Defense.
BY DEFENSE COUNSEL:
Q. Asante, do you ever remember seeing things and hearing things that weren’t real?
A. No.
******
Q. When you’re playing a game with your friends and you can’t be first in line, does that make you mad?
A. No.
BY THE STATE:
Objection, your Honor.
BY THE COURT:
I would sustain that.
BY DEFENSE COUNSEL:
Q. Do you ever have fights with your friends?
BY THE STATE:
Objection, your Honor.
BY THE COURT:
I would sustain that.
******
BY DEFENSE COUNSEL:
—the possibility of this child having either gotten in a fight with another child or having inflicted certain wounds upon herself—
BY THE COURT:
Oh, if you want to ask her has any child ever specifically caused you any scarring or anything like that as the State alleges has occurred, you certainly may do that. Please, I will not prevent you from doing that....
The court’s comments suggest that, as defense counsel’s questions were not directly asking how the child received her injuries, but were indirectly inquiring whether her injuries were self-inflicted or inflicted during altercations with other children, it found the probative value of the questions substantially outweighed by other factors like the danger of unfair prejudice, confusion of the issues, misleading the jury and/or waste of time. The trial court’s rulings on the scope and extent of cross-examination should not be disturbed absent an abuse of discretion. State v. Coleman, 406 So.2d 563 (La.1981); State v. Fleming, 574 So.2d 486 (La.App. 4th Cir.1991). Therefore, as the record does not reflect that the trial court abused its discretion in excluding defense counsel’s questions, we find the trial court’s rulings did not constitute reversible error.
This assignment is without merit.
In her third assignment of error, Carson claims the trial court erred in refusing to admit the victim’s medical records for the purpose of impeaching the victim.[4] She claims the victim’s medical records from the New Orleans Adolescent Hospital would have shown the child is aggressive, suicidal and prone to fabricate stories.
In State v. Davis, 562 So.2d 1173 (La.App. 4th Cir.1990) and State v. Eishtadt, 531 So.2d 1133 (La.App. 4th Cir.1988), however, this court stated that medical records are privileged, are not evidence concerning credibility and cannot be used for the purpose of impeachment. Cf. State v. Baker, 582 So.2d 1320 (La.App. 4th Cir.1991), writ den., 590 So.2d 1197 (La.1992). Consequently, the trial court did not commit reversible error by ruling that the medical records were inadmissible.
This assignment is without merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Asante testified that her mother "told me to do something, and I ain’t hear her, so she aimed at my chest, and I throwed my hand up, and she caught (sic for "cut”) my finger.”

. Dr. Turner also testified that Asante told him “that her mother had taken a blood-soaked rag from between the mother’s private parts and ... And taken that blood-soaked rag and placed it in Asante’s mouth and told her to eat it.”

. LSA-C.E. art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

. This court has not been provided with these medical records, which were not made part of the record below.