WALTZER, Judge.
This is an appeal from a conviction in accordance with a jury verdict finding the defendant, Percy Gray, guilty of simple possession of heroin, a violation of R.S. 40:966(C)(2). From that conviction, defendant appeals. We affirm.
I. PROCEDURAL HISTORY OF THE CASE:
On April 20, 1989, a true bill was returned indicting defendants Percy Gray and Lionel Delpit, charging them with the distribution of heroin, a violation of R.S. 40:966(A)(1). A motion for severance was granted on August 31, 1989. On September 6, 1989, Lionel Delpit was tried by a twelve member jury and acquitted. On September 19, 1989, defendant Percy Gray was tried by a twelve member jury that returned a responsive verdict of simple possession of heroin, a violation of R.S. 40:966(C)(2). On March 1, 1990, the defendant was sentenced to six years at hard labor. The record was confected in this court on February 4,1992 and submitted to the appellate panel on April 2, 1992.
II. FACTS:
In cooperation with the Federal Drug Enforcement Agency (DEA), several officers of the New Orleans Police Department (NOPD) conducted an undercover investigation, designed to target the illegal sale of heroin. As part of this operation, Detectives Wayne Farve (“Farve”) and Clarence Wethern (“Wethern”) of the NOPD were to provide surveillance coverage, and Officer Jimmy Penton (“Penton”) of the Slidell Police Department was chosen to pose as a heroin distributor buying supplies for out-of-city resale.
On May 19, 1988, Penton and an informant went to 1514 Frenchman Street in New Orleans. Wethern and Farve were positioned in separate vehicles in order to monitor the transaction and provide backup.
*1217 At trial Wethern testified that he observed Penton exit his vehicle and enter an alley way parallel to the residence. At that point, Wethern lost visual contact with Pen-ton.
Upon entering the alley, Penton testified that he was approached by Lionel Delpit who asked whether Penton wished to buy any heroin. The undercover officer responded that he wanted a “bundle” (twenty-five units of heroin individually wrapped in foil). However, according to Penton’s testimony, Delpit could only obtain sixteen “foils” for four hundred dollars. The confidential informant was then ordered by Delpit to leave the alley.
Penton then gave the money to Delpit, who immediately entered the residence. At or about this time the homeowner, Jane Louis, entered the alley. Jane Louis is Percy Gray’s mother. Seeing that the alley was occupied, Jane Louis hastily exited the alley and entered the front of her home.
Thereafter, defendant Percy Gray came outside and stood on the steps, approximately three feet above Penton. Penton testified that during this transaction, Delpit referred to the defendant as “Percy.”
The defendant then gave Penton the sixteen foils of heroin and instructed Penton to park away from the house and to walk to the house on subsequent visits. Furthermore, Gray offered to provide Penton with extra foils of heroin on their next transaction to remedy the fact that a “bundle” was unavailable. Penton then returned to his car and delivered the heroin to the office.
After observing Penton leave in his car, Wethern and Farve saw Gray exit the alley way, enter a Cadillac and drive in the same direction as Penton. Wethern and Farve followed the defendant’s vehicle. In the course of this surveillance, Farve testified that he pulled next to Gray’s car and obtained a description of the occupant/driver.
At the DEA office, it was determined by the officers that the description of the seller of the heroin matched the description of the driver of the Cadillac. The license plates on the cars seen at or near 1514 Frenchman Street were checked, revealing that one car was registered to Percy Gray.
On a later date, Wethern and Farve showed Penton a single photograph of the defendant. This photograph was identified by Penton as the individual who had given him the foils of heroin.
Nine months later, on March 31, 1989, the defendant was arrested pursuant to an arrest warrant. At that time, a positive identification was made by Penton and Farve.
III. SPECIFICATIONS OF ERROR:
On appeal, defendant-appellant raises the following specifications of error:
1. The trial judge erred in allowing the jury to consider a police identification.
2. The evidence was insufficient to prove the elements of the offense beyond a reasonable doubt.
3. The trial court erred in its jury charge.
4. The trial court erred in its supplemental jury charge.
A. Assignment of Error Number One
The defendant argues that the trial judge erred in allowing the jury to consider evidence of an impermissible identification. The defendant argues that since the witness Jimmy Penton, the police officer who purchased heroin from the defendant identified Percy Gray from only one photograph, rather than an array of photographs, the identification was unnecessarily suggestive and unreliable.
This issue is not properly before this court because defendant failed to timely object thereto.
Code of Criminal Procedure Article 841(A) provides as follows:
“An irregularity or error cannot be availed of after a verdict unless it was objected to at the time of the occurrence.”
In this case, no objection was made at trial, nor was any motion to suppress the identification filed or held. The minute entry dated July 7, 1989, indicates that “no *1218 motions lie.” The defendant argues that “undoubtedly” the State made the assertion that there was no identification procedure employed, thereby withholding information from the defense. The State argues that the defendant is speculating as to the reasons why no motions lie, and that such speculation is inappropriate on appeal. This debate is irrelevant. When the defendant became aware of the photo identification during trial, he did not object or file at that time, thereby waiving his objection for purposes of appeal.
A defendant who fails to object at trial to the admission of the identification evidence or testimony, and who fails to file a motion to suppress the identification, waives the right to assert the error on appeal. State v. Naas, 409 So.2d 535, 547 (La.1981), cert. denied 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982). Absent an objection or motion, appellant may not raise the issue of an identification tainted by “previous illegal out-of-court identifications.” State v. Phanor, 325 So.2d 579, 581 (La.1976).
Since the defendant failed to file a motion to suppress the identification and did not object at trial to testimony or introduction of physical evidence, this specification of error is without merit.
B. Assignment of Error Number Two
The defendant asserts that the jury convicted him without sufficient evidence. When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. R.S. 15:438. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard.
The original description given by Penton after the transaction was that the seller was known as “Percy”, that he had short hair and no facial hair, he was approximately 5’7” to 5’8” in height, weighed approximately 160 to 165 pounds, was approximately forty years old (T. 66) and had a gold stud in his ear. Shortly after the sale, Penton saw a photograph of appellant and identified him as the perpetrator. The viewing of the photograph was not months later, as appellant suggests. Again, on the date of appellant’s arrest “Penton saw” the defendant in close proximity and identified him. Penton identified Percy Gray again in court.
Officer Farve saw appellant exit the alley and enter a car. His original estimate of the seller’s height was 5’8” to 5’11”. He said appellant had no facial hair other than what he had at trial, a mustache. He also identified appellant at arrest and in court.
Appellant testified that he was 5’11½”, had two scars on his left cheek which had to be pointed out to the jury, and had never worn a stud in his ear.
Penton pointed out that appellant had been standing on steps above him and that an estimate of his height was difficult. When viewing Percy Gray in court, Penton said that he knew how old Gray was, but that Gray still looked about forty, because of his facial features and grey hair. When defense counsel suggested that appellant did not have pierced ears, Penton stood by his original testimony of the ear stud and said that maybe the piercing healed. It is *1219 noted that the piercing could have closed in the sixteen months before trial.
The jury heard the testimony, noting the demeanor of the witnesses and viewed the appellant at trial. They could thus determine if Gray could be mistaken for a forty-year-old man. The jury could likewise determine if the scars on his face were so indiscernible as to escape detection. The jury could judge Gray’s apparent height and consider the explanation of the discrepancy and the jury could compare Penton’s 5’6” to 5’8” description and Farve’s 5’8” to 5’11” to appellant’s apparent height.
Consideration of the entire record reveals that the evidence, viewed in a light most favorable to the prosecution, established the defendant as the perpetrator beyond a reasonable doubt. This specification of error is without merit.
C. Assignment of Error Number Three
The defendant claims that the trial court erred in its jury instruction on reasonable doubt because the instruction was identical to that in Cage v. Louisiana, — U.S. -, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The defendant is correct. The inappropriate language found in Cage defined reasonable doubt as raising a “grave uncertainty,” and a “substantial” doubt, requiring a “moral certainty.” Cage, supra, 111 S.Ct. at 329. The trial court in this case used the identical language as that found in Cage. (Jury Instruction Transcript pp. 3-4)
In Cage, the United States Supreme Court found that this language could have allowed a reasonable juror to interpret the instruction as requiring a degree of proof below that required by the Due Process Clause. Cage, supra, at 330. Consequently, the Court remanded the case to the Louisiana Supreme Court. On remand, the Louisiana Supreme Court held that the charge was harmless error and the United States Supreme Court subsequently denied certiorari. State v. Cage, 583 So.2d 1125 (La.1991), cert. denied — U.S. -, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991). Thus, the standard of review in these cases has become whether the erroneous instruction given constituted harmless error.
To be harmless, a trial error must be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The analysis mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless. United States v. Hasting, 461 U.S. 499, 508 n. 7, 103 S.Ct. 1974, 1980 n. 7, 76 L.Ed.2d 96, 106 n. 7 (1983).
Here, the evidence against the defendant is overwhelming. Officer Penton testified that the defendant stood three feet from Penton and sold him sixteen “foils” of heroin. Officer Penton also testified that Delpit referred to the defendant as “Percy.” Officers Farve and Wethern saw the defendant leave the residence and enter a Cadillac. The officers followed the Cadillac and pulled alongside long enough to get a description of the defendant. This description matched Officer Penton’s description of the man who sold him the heroin. Officer Farve also testified at trial that the defendant was the person that he saw leave the residence, and subsequently followed. Officer Penton identified the defendant from a photograph and further identified him in court at trial.
Viewing the record as a whole, the jury had sufficient evidence to find the defendant guilty beyond a reasonable doubt. The erroneous jury instruction by the trial judge did not contribute to defendant’s conviction or sentence. Accordingly, the erroneous instruction was harmless and this specification of error is without merit.
D. Assignment of Error Number Four
The defendant’s final claim is that when the jury returned to the courtroom for supplemental instructions, the trial court erred in providing examples of the different ways in which the jury may reach a verdict. The defendant’s argument on appeal is misleading. The trial court responded to a question involving “the proper procedure” for deliberation. The transcript provides as follows:
*1220 “BY THE COURT:
Okay. Is there anything anyone would like to ask me, again, anyone else? Yes, sir.
BY THE JUROR:
What is the proper procedure? There are five things there. Is the proper procedure for the group to agree on one, on one of those things, to vote on it, and then vote on that one together or what; what is the proper procedure?
BY- THE COURT:
You can do it any way you want.
BY THE JUROR:
Any way?
BY THE COURT:
The Jury can decide any way you want. Some jurors have decided, and this is just from my experience with jurors in the past. Sometimes jurors decide the issue of guilt or not guilty; and if ten jurors agree that a person is guilty, then they may decide among the possible guilty verdicts, which of the four guilty verdicts; or if you find that he’s not guilty, obviously then there’s no need to discuss the other four; or you can simply vote on any one of the five presented to all 12 of you and, say, vote on which of the five possible verdicts, and then you can discuss it based on that. There is no real — There is one particular way to do it. The Jury does it. Usually the foreperson sort of controls that, but then, again — that’s not really — That can be done any way. There’s no right or wrong way in an attempt or an effort to reach a verdict in this case. Is there any questions or anything you would like to ask me before I give you one additional instruction, anything else?
BY THE JUROR:
Would it be proper if you can’t agree on the maximum charge, which is distribution, to reduce it to a minimum charge?
BY THE COURT:
You can do anything you want up there. No one ever questions a Jury as to what your verdict is. You can come back with any verdict, any verdict that you feel is necessary. If a verdict was not a proper verdict on that sheet, it would not have been placed on there. Anything you come back with, that 10 of you agree upon is proper, regardless of that verdict. Yes, sir.”
(Tr. Pgs. 194-196).
The defendant asserts that the excerpted portion of the instruction was a coercive instruction and as such was unduly prejudicial.
We disagree. The trial court was explaining possible procedures for the jury to obtain a verdict. The judge was not commenting on the defendant’s guilt or innocence or on any elements of the crime. The judge was responding to a puzzled jury, and merely provided examples to aid them. We find that the trial judge did not commit error. This specification of error is without merit.
For the reasons discussed, the conviction and sentence of Percy Gray is affirmed.
AFFIRMED.