636 So.2d 1103 (1994)
STATE of Louisiana
v.
Kenneth E. LARPENTEUR.
No. 93-KA-1424.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1994.
*1104 Harry F. Connick, Dist. Atty., Karen E. Godail, Asst. Dist. Atty., New Orleans, for plaintiff.
Olga Kogos, New Orleans, for defendant.
Before KLEES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
On November 23, 1992 the defendant, Kenneth E. Larpenteur, and two co-defendants were charged by bill of information with simple burglary. On February 4, 1993 the case was nolle prossequied as against the co-defendants, but maintained against the defendant. On March 15 the defendant elected to be tried by the court, which found him guilty of attempted simple burglary. On March 22 the defendant was sentenced to serve three years at hard labor. On March 23 the State filed a multiple offender bill against the defendant. On May 10 the State amended the multiple bill from a triple to a second offender, and the defendant, through counsel, stipulated to his identity as the person named in the predicate in the bill. The defendant was then resentenced to serve three years at hard labor under the multiple bill. The defendant now appeals raising two assignments of error.
The record reflects that on August 12, 1992, at around 1:30 p.m., Elvia Payton noticed two males walking around inside an abandoned house at 318 North Roman Street, a half block from his own home on Bienville Street. He suspected that the men had no authority to be there because the property had belonged to his uncle, Leo George, and upon George's death was inherited by George's two sisters. Acting on his suspicions, Payton called the police.
Officer Melvin Gilbert and his partner responded to the call. They were in full uniform and arrived in a marked car. They announced themselves as police and ordered the subjects to come out. There was no response. Because the subjects were not seen fleeing the scene, Gilbert and his partner proceeded to search the premises. The grass was overgrown behind the house so the officers went to the backyard of the house next door. From there they observed the two subjects crouching and attempting to hide in the tall grass behind the abandoned house. The officers instructed the subjects to stand up and put their hands where they could be seen. The men were then arrested without incident.
The men arrested in the yard were Warren Angelo, nephew of the defendant, and Angelo's friend, David Dominici, who owned a truck. The suspects were advised of their rights and refused to waive them. Nevertheless, they made statements to the officers to *1105 the effect that they were sent by someone who had purchased salvage rights to the property.[1] The officers observed wrought iron railings in the truck which were similar to railings on the front porch of the home as evidenced by a photograph of the home taken before the incident.
Ms. Mabel Royal testified that she and her sister inherited the property from their brother and that she kept up the mortgage payments. She estimated that the house had been vacant for eight or nine months, but that she rode by and checked it regularly. She testified that she had last been in the house about a month before the incident. At that time everything was there. When she checked it after this incident, the house was missing the wooden floorboards, the mantelpiece, the light fixtures, the toilets and the railing off the porch.
Donald Scott, the president of Guaranty Saving and Homestead Association, confirmed that the original mortgagor on the property at 318 North Roman Street was Leo George, that the title passed to his sisters after George's death, that Ms. Royal continued to make the mortgage payments, and that the homestead had no knowledge or record of the sale of salvage rights to the property.
Detective Clifford Maher was assigned to do follow-up investigation of the incident. He attempted to reach the defendant at the phone number provided by Angelo and Dominici. An answering service took the call and the defendant called him back. Maher did not recall advising the defendant of his rights over the phone, but explained to the court that the defendant was not yet under suspicion. Rather, Maher was merely investigating the defense purported by the arrested subjects. The defendant confirmed the story of Angelo and Dominici, that they were there on the instruction of the defendant, who had purchased salvage rights. Maher further testified that the defendant agreed to come in with the proper documentation to clear up the matter within thirty minutes. Maher further testified that after waiting for the defendant for an hour and a half, he proceeded to charge Angelo and Dominici with burglary and take them to jail.
The defendant testified that he was in Picayune, Mississippi when he returned Detective Maher's call. He denied promising that he could meet Maher at the police station with the documentation within half an hour. He further testified that when he arrived in New Orleans and obtained the documentation, he was advised by Maher that it was too late because Angelo and Dominici had already been charged and taken to jail. The defendant then appeared in magistrate court to explain that Angelo and Dominici had been acting on his instructions because he had salvage rights to the subject property.
James Miguez of the district attorney's office testified that he was setting bonds for Angelo and Dominici in magistrate court when he was approached by the defendant, who stated that the arrested individuals were working for him and that he had purchased the salvage rights to the building. The defendant then showed Miguez a copy of a money order for $300.00, which was supposed to be the amount he paid for the salvage rights.
The defendant testified that he is the owner of Rampart Properties Salvage and is also a marine engineer. He further testified that he uses an answering service for the business and that the business is not a registered corporation. According to the defendant, he was contacted by a man who identified himself as Jack Miller, who offered to sell him the salvage rights to the subject property for $300.00. The defendant then bought a money order for that amount from the bank and met Mr. Miller at a corner near the property. The defendant further testified that Mr. Miller showed him a document with a legal description of the property on it. Miller explained that the papers were in the name of a relative of his who had died and that he just wanted to sell whatever he could out of the property and get back to his home in Michigan. The defendant looked at the *1106 house from the outside then gave Miller the money order. The defendant testified that he drew up a bill of sale, apparently on the same document as the money order, and made a copy of it. The copy of the money order was shown to the court, but not introduced as evidence by the defense. The defendant further testified that he asked Angelo and Dominici to go over and look at the property to see what they would need for the salvage operation, but did not tell them to take anything.
A review of the record for patent errors reveals that there were none.
By his first assignment of error, defendant contends that the trial court erred by not allowing the defense to present a witness, Warren Angelo, at trial. On August 12, 1992, Warren Angelo and David Dominici were charged with the defendant for simple burglary relative to this incident. On February 4, 1993, more than a month prior to the defendant's trial, the case against Angelo and Dominici was nolle prossequied. At trial, the State attempted to call Angelo, who invoked the privilege against self-incrimination on the advice of counsel. Subsequently, the defense attempted to call Angelo. The court refused to order Angelo to testify, permitting him to again assert a blanket privilege.
As noted by the State, where there is no contemporaneous objection, an issue is not preserved for appeal. C.Cr.P. Art. 841(A); State v. Allen, 618 So.2d 547 (La. App. 4th Cir.1993); State v. Gray, 598 So.2d 1215 (La.App. 4th Cir.1992). The defense did not object in this case, when the court refused to require witness Angelo to take the stand for the defense because he had previously invoked his Fifth Amendment privilege. (Tr. 99). Accordingly, this court could refuse to review the claim. However, a review of the claim indicates that it is without merit.
Both the United States Constitution and the Louisiana Constitution provide a privilege against self-incrimination. U.S. Const., Amend. V; LSA-Const. Art. 1 § 16. A witness may therefore assert the privilege when he has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951).
Normally, a witness, as opposed to the defendant on trial, may assert the privilege only with respect to particular questions. State v. Wilson, 394 So.2d 254 (La. 1981); In re Parker, 357 So.2d 508 (La.1978). However, a blanket privilege is permitted, despite the compelling interest of the accused to present a defense, when it is evident that the answer to questions or an answer in explanation of the refusal to answer any questions posed could result in injurious disclosure. State v. Coleman, 406 So.2d 563 (La.1981).
As noted by the State, this exception is generally applied when the witness is awaiting trial or sentencing for charges arising out of the same incident as the defendant's, and the defendant seeks to question the witness about the incident. The exception was extended by this court to include a co-defendant whose case was nolle prossequied prior to the defendant's trial. State v. Adams, 537 So.2d 1262 (La.App. 4th Cir.1989), reversed on other grounds, 550 So.2d 595 (La.1989). In that case, this court reasoned that there was no difference in the exposure of a witness who had charges and one whose charges had been nolle prossequied because the State could always reinstitute the charges against the witness. The blanket privilege has also been approved for a witness already convicted and sentenced but who might be exposed to further criminal liability from questioning. Coleman, supra, and State v. Seaton, 604 So.2d 182 (La.App. 4th Cir.1992).
In Coleman, the court recognized that the exception to the question by question invocation of the privilege applied because the witnesses, though already convicted, could still be exposed to further prosecution arising out of the incident.[2] However, the court went *1107 further to address the fact that the witnesses had made previous statements that were either introduced into evidence or read to the jury, and that the defendant failed to show how he was prejudiced by the refusal of the witnesses to testify at trial.
As in Coleman, even were the blanket privilege not proper in this case, the defendant was not prejudiced by the failure of the witness to testify. Warren Angelo's testimony at best would tend to prove only that Angelo and Dominici were advised by the defendant that he had purchased salvage rights to the property, that they had been hired by the defendant to remove salvage from the property, and that they had been sent to evaluate the job when they were arrested. Angelo was never reputed to have first-hand knowledge of Jack Miller or to have seen any documents which purported to give the defendant salvage rights. Angelo's testimony would thus not have altered the outcome. Any error in permitting Angelo to invoke a blanket privilege would therefore be harmless error.
By his second assignment of error, the defendant contends that the evidence was insufficient to sustain his conviction. In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
The defendant was found guilty of attempted simple burglary. Simple burglary is defined in R.S. 14:62, which, in pertinent part, provides:
Simple burglary is the unauthorized entering of any ... structure ..., with the intent to commit a felony or any theft therein, other than as set forth in Section 60 [aggravated burglary].
An attempt is defined in R.S. 14:27, which, in Par. A, provides:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
The theory of principals is defined in R.S. 14:24, which provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
In the instant case, the trial judge has provided this court with the benefit of his reasoning. He found that "the rightful owners of the property did not give anyone permission to be in the house on August 12, 1992 to engage in salvaging or taking any property from the house." The trial judge further found that the events which led to the arrest of Angelo and Dominici indicated that they were in the house looking to take something which did not belong to them. Finally, the defendant went to the preliminary hearing of Angelo and Dominici and made a voluntary statement to assistant D.A. James Miguez that they were working for him. The elements of attempted simple burglary were thus established by the State's case.
The trial judge then proceeded to discount the defendant's defense that he had purchased the salvage rights. The judge noted that, even accepting the defendant's version of the alleged purchase of rights, the defendant should have known from the price that the object of his purchase "might be a little warm." The judge also had just cause to disbelieve the professed naivete of the defendant relative to property rights considering that he allegedly operated a real estate salvage business and his previous conviction arose from a questionable title search.
The trial judge finally noted that, under the theory of principles, the defendant had the intent to enter the house without authorization and to take property from that house which did not belong to him. He further found that the defendant did at least one act in furtherance of this intent. Accordingly, *1108 he found the defendant guilty of attempted simple burglary.
We find no error in the trial court's assessment of the facts of this case or of their sufficiency to sustain the conviction.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
SENTENCE AND CONVICTION AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting with reasons.
I respectfully dissent because the trial court erred in granting a blanket privilege against self incrimination to Warren Angelo, an essential defense witness.
The defendant, Kenneth Larpenteur, the owner of Rampart Properties Salvage, hired Warren Angelo and David Dominici to investigate and evaluate the salvage materials at 318 N. Roman St., New Orleans, Louisiana. Angelo and Dominici were arrested on the property. They advised the officers that they were employed by the defendant and were instructed by him to enter the property because he owned the salvage rights.
The defendant immediately contacted Officer Maher and explained over the telephone from Picayune, Mississippi, that he owned the salvage rights to the property and would come to New Orleans with documentation to substantiate his claim. When he arrived, the defendant discovered that Warren and Dominici were charged with simple burglary. He proceeded to Magistrate Court and explained to the Magistrate and ADA James Mequez that Angelo and Dominici were his employees, that he owned the salvage rights to the property and that he sent them to the location to evaluate the salvage materials. He produced a money order to substantiate his claim.
The State nolle prossequied the charges against Angelo and Dominici, but elected to proceed to trial against Larpenteur for simple burglary.
At trial the State called Angelo to testify. The court, on its own motion, and without any objection by the defendant, immediately appointed a public defender to represent Angelo. After a conference, counsel informed the court that Angelo wanted to exercise his 5th Amendment privilege. The court ordered the defendant released from the subpoena. Neither the State or defendant's counsel had the opportunity to participate in the colloquy. (Tr. 59-60). Neither the defense or the witness raised the privilege issue. The trial court issued, in effect, a blanket privilege to the witness. The court did not require the witness to submit to questioning or to assert the privilege as he desired to individual questions.
When the defense called Angelo at trial, the court, on its own motion, without any objection by the State, refused to allow him to testify. (Tr. 99). The Fifth Circuit has interpreted the privilege to decline to testify to be personal and "assertable only by the witness." United States v. Goodwin, 470 F.2d 893, 902 (1972), cert den'd, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973). Here the court took it upon itself to initiate the option to assert the privilege. This is clearly improper.
"The general rule is that no witness may make a blanket assertion of his Fifth Amendment rights which would exempt him from being a witness. He must assert the privilege on a question by question basis." State v. Roebuck, 532 So.2d 812 (La.App. 4th Cir. 1988). The majority correctly recognizes the general rule, however, they erred when they applied the exception[1] to this precept. There is nothing in this record nor is it evident that Angelo's answers to questions, or the refusal to answer any questions posed, would result in injurious disclosure to him. It is clear, in this case, that Angelo's risk of injurious disclosure was inappreciable. Moreover, a blanket privilege, issued by the court on its own motion, without a request from the witness, destroys the rights of both the State and defense to present their cases *1109 fairly. State v. Coleman, 406 So.2d 563 (La. 1981).
The majority further justifies the blanket privilege on the ground that Angelo is subjected to reinstitution of criminal charges citing State v. Adams, 537 So.2d 1262, 1266 (La.App. 4th Cir.1989). In the instant case this is not applicable because the witness had been nolle prossequied on the charges against him and there is no reason to believe that the charges would be reinstituted against him.
The general and usually accepted rule is found in McCormick, On Evidence (3rd ed.) (West 1984):
The privilege of one not an accused is a privilege to decline to respond to inquiries, not a prohibition against inquiries designed to elicit responses incriminating in nature. Because of this difference in the nature of the privilege of one not an accused, the manner of invoking it correspondingly differs from the manner of invoking the privilege of an accused. Thus by unusual holding, one not an accused must submit to inquiry (including being sworn, if the inquiry is one conducted under oath) and may invoke the privilege only after the potentially incriminating question has been put. Moreover, invoking the privilege does not end the inquiry and the subject may be required to invoke it as to any or all of an extended line of questions.
The majority, incorrectly then speculates that even if the blanket privilege was improper, the error is harmless.
The defendant contended from the moment of his employees arrest that he owned the salvage rights and that he directed Angelo and Dominici to the property. He produced documents to support his claim. The State obviously accepted this explanation and utilized it as the justification to nolle prossequie the burglary charges against Angelo and Dominici. Warren's testimony could have corroborated the defendant's statements that he bought the salvage rights to the property, that he directed his employees to evaluate those rights and not to remove any of the property or that there was no intent to commit a burglary. He might also have testified as to the reasons the State dismissed the charges against him. He may have had personal knowledge of the transaction between Miller and the defendant. All of these lines of inquiring on direct or cross examination would not have caused Angelo an injurious disclosure. Moreover, I find that any rational trier of fact, after reviewing all of the evidence as favorably to the prosecution as a rational trier of fact can, necessarily must have a reasonable doubt as to the defendant's guilt, based on the record. Any corroboration of the facts by Angelo could create reasonable doubt in the mind of any rational trier of fact. State v. Mussall, 523 So.2d 1305 (La.1988).
The defendant was deprived of his constitutional right to present a witness and his defense. Therefore, he is entitled to a new trial.
NOTES
[1] Upon the suggestion of the court, defense counsel objected to the admission of the hearsay statements, which objection was sustained.
[2] Witness Freddie Edwards was found guilty of attempted of possession of P.C.P. with intent to distribute and was awaiting sentence. Witness Wendell Miller pled guilty to possession of P.C.P. with intent to distribute and had already been sentenced. Defendant Glenn Coleman was charged in a separate bill with first degree murder and possession of P.C.P. with intent to distribute. The charges arose out of the same incident.
[1] "[A] question by question invocation is not necessary where the witness was charged with the same crime, and it is apparent that the questioning would be devoted to subject matter which would require the defendant to invoke the privilege." State v. Savoy, 537 So.2d 246, 249 (La. App. 4th Cir.1988).