| WOODARD, Judge.
This appeal arises from a case in which Andre Jones, the Defendant, was found guilty of possession of cocaine with intent to distribute, in violation of La.R.S. 40:967, and conspiracy to possess cocaine with intent to distribute, in violation of La.R.S. 14:26; 40:967. He appeals his conviction and sentence. We affirm in part, but remand with instructions, and we reverse in part.
FACTS
On June 21, 1997, the Defendant attempted to pass counterfeit money at the Gotto Go convenience store in Jena, Louisiana. The LaSalle Parish Sheriff Department (LPSD) was alerted, and pursuant to Deputy Larry Morphis’ investigation, several search warrants were issued, one of which described “[t]he first silver/grey mobile home on south side (sic) of Edwards Street % mile east of Parker Lane serving as the residence of Andre Jones and all outlying appurtenances,” to search for any and all contraband, counterfeit bills, equipment or machinery used in the manufacturing or reproduction of counterfeit money-
| ¡.Officers from the LPSD arrived at the Defendant’s trailer on June 22, 1997 at 7:40 a.m. A team composed of Deputies Morphis, Darryl Husbands, and Glen Humphries covered the trailer’s front entrance. Another team composed of Sheriff Dennis Warwick, Deputy Randy Lowe, and Patrolman Jim Attaway were guarding a door located at the back of the trailer. Then, the officers pounded on the door and announced their presence. At that time, the following events occurred in a'matter of seconds. The LPSD officers heard heavy footsteps, someone running from one end to the other end of the trailer, and a toilet flushing. The front *710 team tried to force its way into the trailer but encountered problems with the front door. Consequently, Deputy Morphis ordered the back team to go in. Upon entering the trailer, Patrolman Attaway, one of the first officers inside the trailer, saw the Defendant exiting a bathroom located to his right, where the running was heard. He subdued and handcuffed the Defendant.
The back door enters into a hall and faces a middle bedroom. To the right is a main bathroom, and at the right end of the trailer is another bedroom. To the left is a dining room and kitchen area, and at the left end is a master bedroom wherein is located a bathroom. The master bedroom’s toilet appeared broken.
Patrolman Attaway handcuffed the Defendant and placed him in the trailer’s hallway. The officers found and promptly handcuffed Ms. Rosie Wilford located in the master bedroom, and Ms. Shantae Simmons and Mr. Leonard Lewis located in the middle Bedroom. Then, the officers unhooked the sewer line and flushed the main bathroom’s toilet a couple of times. As a result, two plastic bags containing cocaine and loose rocks of cocaine spilled out onto the ground.
The Defendant was charged by a bill of information with the crime of possession of cocaine with intent to distribute, in violation of La.R.S. 40:967, and with the crime of conspiracy to possess cocaine with intent to distribute, in violation of La.R.S. 14:26; 40:967. After a twelve-person jury trial held on January 27-28, 1998, the Defendant was found guilty, as charged, on each count. Thereafter, on July 1, 1998, he was sentenced to serve 180 months at hard labor, the first sixty months to be served without benefit of parole, probation, or suspension on the possession charge. On the conspiracy charge, the court sentenced the Defendant to serve eighty months at hard labor, with two and one-half years to be served without benefit of parole, probation, or suspension. The full term sentences are set to run concurrent with each other except for that portion designated as being without the benefit of parole which are to run [3consecutive to each other. Also, the sentences are to be served consecutive with any other prior sentences. The Defendant appeals.
ASSIGNMENTS OF ERROR
The Defendant asserts the following assignments of error:
1. The verdict is contrary to the law and evidence.
2. The verdict of guilt failed to exclude every reasonable hypothesis of innocence.
3. The trial court erred by allowing the State to prosecute a double inchoate offense.
4. The trial court erred in admitting evidence obtained as a result of an unconstitutional search and seizure.
5. The trial court erred by admitting evidence seized by officers who exceeded the scope of the authority under the search warrant.
6. The trial court erred by admitting evidence seized as a result of a search based upon an invalid and unsigned search warrant.
7. The trial court erred by allowing Detective Larry Morphis to testify as an expert and give opinion evidence.
8. The trial court erred by allowing prosecutor to repeatedly make reference to inadmissible other crimes evidence.
9. The trial court erred by denying appellant his constitutional rights to present a defense and to compel attendance of witness, Clyde Bowen, by allowing State to intimidate witness into not testifying.
10.The trial court erred by giving prohibited burden-shifting instruction to the jury that “you may infer Defendant intended the natural and probable consequences of his act.”
*711 11. The trial court erred by imposing excessive sentences in light of Defendant’s age and circumstances.
12. The defendant was denied his Sixth Amendment right to effective assistance of counsel.
JjLAW
ERRORS Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we found one error patent requiring vacation of the Defendant’s sentence.
The trial court sentenced the Defendant to an illegal sentence. For count one, possession of cocaine with intent to distribute, the trial court sentenced the Defendant to fifteen years at hard labor, with the first five years to be served without benefit of parole. On count two, conspiracy to possess cocaine with the intent to distribute, the trial court sentenced the Defendant to serve eighty months at hard labor, to run concurrent with the fifteen years with two-and-one-half years to be served without benefit of parole. The trial court then stated that it was going to make “it” consecutive to the first five years without benefit of parole. It is unclear whether “it” was referring to the entire sentence for count two or only the two and one-half years without benefit of parole. Nevertheless, we find that both sentences are illegal since the penalties in effect at the time the offenses were committed did not provide for the restriction of parole benefits.
The penalty provision for possession of cocaine with the intent to distribute, provided for in La.R.S. 40:967(B), was amended in 1997 by Act 1284, § 1 effective August 15, 1997. In effect, the amendment provides for the first five years of the sentence to be served without benefit of parole. On the contrary, the penalty provision prior to the amendment did not provide for a restriction of parole benefits.
In the case sub judice, the offense was committed June 22, 1997, prior to the effective date of the amendment. The trial court sentenced the Defendant to fifteen years, with five years to be served without the benefit of parole or probation. Since the pre-amendment penalty provision was in effect at the time the Defendant committed the present offenses, his parole eligibility should not have been restricted. State v. Hopkins, 367 So.2d 346 (La.1979).
The trial court, in its reasons for judgment, warned that its sentence should not be read as applying La.R.S. 40:967 as amended by the 1997 act but as relying on La.Code Crim.P. art. 894.1 as well as La. R.S. 40:982. Whatever statute the trial court may have relied on, the result is the same; namely, the trial court illegally restricted the Defendant’s right to parole benefit. When a statute does not provide for the restriction 1 sof parole benefits, the Defendant’s parole eligibility is to be determined by the department of corrections pursuant to La.R.S. 15:574.4. See State ex tel. Hill v. State, 96-1002 (La.6/27/97); 696 So.2d 983. Thus, the Defendant’s sentence is vacated, and the case is remanded to the trial court for re-sentencing.
We also note that the trial court did not inform the Defendant of the three-year prescriptive period for filing post-conviction relief as provided for in La.Code Crim.P. art. 930.8. Thus, upon remand, the trial court is instructed to so inform the Defendant.
Assignments of Error Numbers 1 and 2
The Defendant contends that the evidence presented at trial was circumstantial and insufficient to convict him beyond a reasonable doubt on the charges of possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute.
We review claims of sufficiency of the evidence according to the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 *712 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). In Jackson, the Supreme Court stated that we should view the evidence in the light most favorable to the prosecution. When the State’s case relies solely on circumstantial evidence, the issue is whether a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. La. R.S. 15:438; State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983); see also, State v. Morris, 414 So.2d 320 (La.1982).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
Possession of Cocaine with Intent to Distribute
Under La.R.S. 40:967, the issue is whether the State presented sufficient evidence to prove that the Defendant possessed cocaine with intent to distribute. The record reveals that the following evidence was presented as proof of the Defendant’s possession of cocaine. Ms. Wilford testified that on the morning of June 22, 1997, she heard a voice yell “police, open up,” at which time, the Defendant got up and ran | r,toward the back of the trailer. Deputy Morphis testified that he banged on the front trailer door and yelled “police,” at which time, he heard someone running from one end of the trailer to the opposite end. The officers then heard a toilet flush. He stated that he had difficulties opening the front door and instructed the team of officers posted by the back door to enter. Patrolman Attaway testified that he was positioned by the trailer’s back door. When Deputy Morphis yelled “police,” Patrolman Attaway heard somebody running from the front to the back of the trailer. Upon entering, he saw the Defendant coming out of the main bathroom, where he had just heard the running. He promptly handcuffed the Defendant. Deputy Humphries testified that upon entering through the front door, he immediately went to the master bedroom where he found Ms. Wilford. He stated that the master bedroom’s bathroom appeared to be corroded and not working. Judging that the scene was secure, Deputy Morphis went back outside the trailer, found the sewer line, and separated it. Then, he instructed another officer to flush the toilet a couple of times. He stated that the following came out of the sewer pipe:
There were two cellophane bags. One of them seemed like it had a knot tied in it containing ten or twelve rocks of suspected crack cocaine. There was a second cellophane bag. It looks like it had been torn opened (sic) and, you know, the contents dumped. There was one rock if I remember correctly, in that bag and there was numerous rocks loose. There was an “L” in the sewer line. I cut it with a saw and took it out and dug a hole and found that, you know, the individual rocks laying in the dirt.
Deputy Morphis specified that they recovered a total of twenty-four rocks, which in his opinion means that the cocaine was intended for distribution. Thus, based on such evidence submitted at trial, a rational trier of fact could have found that the Defendant had been in possession of the bags of cocaine and had flushed them down the toilet when the police arrived.
The final question is whether the Defendant possessed the required intent to distribute the cocaine that he had in his possession. In State v. House, 325 So.2d 222 (La.1975), the Louisiana Supreme Court discussed some of the factors to be used in determining whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance. These factors are: (1) whether *713 the Defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form |7usually associated with possession for distribution to others; (3) whether the amount of the drugs created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of the drugs found in the Defendant’s possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
In State v. Hearold, 603 So.2d 731 (La.1992), the Louisiana Supreme Court stated that mere possession of a drug does not amount to evidence of intent to distribute unless that quantity is so large that no other inference is possible. In Hearold, there were two persons in the vehicle when the Defendant was arrested, and the court held that a rational trier of fact could not have concluded beyond a reasonable doubt, solely on the evidence pertaining to the amount of the methamphetamine found in a single bag, that the Defendant was guilty of the “intent to distribute” element of the crime. However, the court did not acquit Hearold because evidence of prior drug distribution, if admissible and when considered with the other evidence pertaining to the amount of drugs found in the bag, could have provided a basis for a rational trier of fact to conclude beyond a reasonable doubt that he intended to distribute the methamphetamine in his possession in accordance with his long standing drug dealing operation.
In the present case, the Defendant testified that, at the time of his June 22, 1997 arrest for possession of cocaine with intent to distribute, he was released on bond after being convicted in January of 1997 of conspiracy to distribute crack cocaine. Deputy Morphis testified that he had been in law enforcement since 1975 and that he had served as a narcotics agent, a detective, and a trooper. In his opinion, the amount of cocaine found indicated that it was not intended for personal consumption but was intended to be sold or distributed. Ms. Wilford, the Defendant’s female companion, testified that the Defendant told her that he and Lewis were “on top” or “big time dope dealers.” Ms. Simmons testified that when an individual in a blue Cadillac requested to purchase drugs from Mr. Lewis, he told that individual to go to the Defendant’s trailer. She said that a number of people actually came to the trailer during the night. The Defendant answered the door and told Ms. Wilford that it was just friends.
Consequently, there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that the Defendant possessed cocaine and that he had the intent to 1 Sdistribute. Accordingly, we affirm the Defendant’s conviction for possession of cocaine with 'intent to distribute.
Conspiracy to Possess Cocaine with Intent to Distribute
The Defendant alleges that there is no proof that he and Mr. Lewis entered into an agreement for the common purpose of distributing drugs. After reviewing the entire record, we reverse his conviction for conspiracy to possess cocaine with intent to distribute.
In order to support a conviction for this charge, the State had to prove beyond a reasonable doubt that the Defendant conspired with another for the specific purpose of committing the crime of possession of cocaine with intent to distribute. La. R.S. 14:26; 40:967.
Criminal conspiracy is defined by La. R.S. 14:26 as follows: *714 (Emphasis added), see also State v. Taylor, 96-1043 (La.App. 3 Cir. 2/5/97); 688 So.2d 1262. We find that the State fell short of its burden of proof.
*713 [An] agreement or combination of two or more persons for the specific purpose of committing any crime, provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination one or more of such parties does an act in furtherance of the object of the agreement or combination.
*714 First, the evidence presented failed to demonstrate that there was an “agreement” within the meaning of the statute. The Defendant testified that in the early morning hours of June 22, 1997, he was at a club with Mr. Lewis, Mr. Clyde Bowen, Mr. Dexter Kitterlin, and two females. He stated that they had just met Ms. Wilford and Ms. Simmons that evening. Ms. Simmons testified that she went with Lewis to spend the night at the Defendant’s trailer. On the way to the trailer, the driver of a blue Cadillac asked Mr. Lewis to sell him drugs. Mr. Lewis told the individual to go by the Defendant’s trailer. Ms. Simmons testified that after she and Mr. Lewis arrived at the Defendant’s trailer and went to bed, several people knocked on the door. She said that Mr. Lewis did not get out of bed to answer the door, and she did not know whether the Defendant answered the door.
|flMs. Wilford testified that she spent the night with the Defendant on this date, and that between 3:00 a.m. and 7:40 a.m., several people knocked on the door of the trailer. She recounted that the Defendant got up and went to the door, telling her. that it was just his friends. Ms. Wilford testified that she asked the Defendant if he knew Mr. Herbert, who claimed to be a “big time dope dealer.” The Defendant responded that Mr. Herbert was not, but that he and his “brother” were “on top” or “big time dope dealers.” Nevertheless, at the time of trial, Mr. Lewis was unavailable to testify. The record reflects that he died in a car accident in Texas, months prior to trial. Thus, the evidence reveals that Mr. Lewis and the defendant may have been involved in drug dealing but does not show whether they conducted their drug dealing activities separately or acted in concert based on an agreement.
Second, assuming that the State had proved the existence of an agreement, still no evidence was presented to the effect of showing that the object of the conspiracy was to possess and distribute cocaine. Similarly, the evidence does not show whether the cocaine found in the trailer was the drugs referred to in the conversation between Mr. Lewis and the driver of the blue Cadillac. Thus, viewing the evidence in a light most favorable to the prosecution, a reasonable jury could not have found beyond a reasonable doubt that the Defendant and Mr. Lewis conspired to possess and distribute cocaine. Accordingly, the Defendant’s conviction for conspiracy is reversed.
Assignment of Error Number 3
Because we reverse the Defendant’s conviction for conspiracy to possess cocaine with intent to distribute, this assignment of error is pretermitted.
Assignments of Error Numbers 4, 5, and 6
The Defendant alleges that the trial court erred by admitting evidence obtained as a result of a defective and unconstitutional search and seizure. He argues that the search was defective for a number of reasons, to wit: there was only one affidavit to support the search warrant for the trailer and the two vehicles; the search warrants were not signed by the judge; the facts and circumstances in the affidavit were not sufficient to establish probable cause; the police exceeded the scope of the search authorization set forth in the search warrant by cutting the sewer line; and he had ineffective assistance of counsel because a motion to suppress was.not filed.
1 mFirst, the Defendant did not object at trial to the introduction of such evidence. Nevertheless, the Defendant claims his counsel’s failure to object amounted to a denial of due process of law, resulting from ineffective assistance of counsel. We consider the merit of this assignment of error because it is raised in conjunction with a claim for ineffective assistance of counsel.
The Defendant first argues that the record only contains one affidavit in support of a search warrant, notwithstanding *715 the fact that there were three separate search warrants, one of the Defendant’s residence or mobile home, one for a 1985 white Cadillac, and another for a 1988 brown Cadillac.
The Defendant does not show where any evidence found as a result of the search warrants to search the two vehicles was produced during the trial of this matter. Further, the affidavit for the search warrant supports the search warrant obtained for the trailer. In State v. Smith, 339 So.2d 829, 832 (La.1976), the supreme court stated that “as a general rule, the propriety of denying a motion to suppress evidence becomes a moot issue if the evidence is not introduced at trial.” Although a motion to suppress was not filed in this matter, the same analogy applies. The Defendant cannot show how the lack of affidavits to support the search warrants for the two vehicles prejudiced him, because none of the evidence which may have been gathered as a result the search was presented at trial.
The Defendant next contends that the search warrants were signed in error by Deputy Morphis and not by a Judge or Magistrate. We find no merit in this argument. A review of the record shows that Judge Mauffray signed each of the search warrants with a signature appearing in the shape of a line.
The Defendant next argues that the affidavit for search warrant is insufficient because the facts and circumstances within the affidavit do not establish probable cause to believe that he was involved in the manufacture or reproduction of counterfeit bills or to justify a belief that the equipment or machinery used to produce counterfeit money would be located in his mobile home. We disagree. In State v. Andrews, 97-2321 (La.App. 4 Cir. 11/13/97); 703 So.2d 137, 139, the court stated:
Generally, searches may be conducted only pursuant to a warrant issued by a judge on the basis of probable cause; probable cause exists where the facts and circumstances within the affiant’s knowledge and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that the evidence may be found at the place Into be searched; in considering a magistrate’s finding of probable cause a reviewing court must determine whether the totality of circumstances set forth in the affidavit is sufficient to allow the magistrate to make a practical, common sense decision that the evidence will be found in the place to be searched; and that this decision includes not only the veracity of the affiant, but also the basis of knowledge of those persons supplying hearsay information. The task of a reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed and his determination of probable cause should be accorded great deference by a reviewing court.
(Citations omitted).
Deputy Morphis prepared the affidavit, and stated:
Andre Jones committed or was a participant directly involved in either passing or attempting to pass counterfeit one hundred dollar bills on seven different occasions on 6/20/97. Jones was observed holding a large quantity of bills on several (sic) of the passing of counterfeit bills and attempts to pass them. Arrest warrants supported by signed affidavits are outstanding 6/21/97. The seized seven counterfeit one hundred dollar bills are of high quality and resolution and have two different serial numbers indicating either counterfeit plates or reproduction equipment. The manufacture or reproduction of counterfeit money requires indoor (sic) facility. Criminal history and current criminal activity of Andre Jones known by local law enforcement indicates high probability of counterfeit accessories being located at above address.
*716 Clearly, such an affidavit gave the judge a substantial basis for determining that there was probable cause to search the Defendant’s residence for contraband, counterfeit bills, equipment, or machinery used in the production of counterfeit money.
The Defendant next contends that the officers exceeded the scope of the search warrant when they cut his sewer line. The search warrant authorized a search of the following described place:
The first silver/grey mobile home on south side of Edwards Street }io mile east of Parker Lane serving as the residence of Andre Jones and all outlying appurtenances.
(Emphasis added). The search warrant further detailed the items to be seized as:
Any and all contraband, any counterfeit bills, any equipment or machinery used in manufacturing or reproducing counterfeit money.
La.Code Crim.P. art. 161(A) provides, in pertinent part:
|iaA judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court which:
[[Image here]]
(3) May constitute evidence tending to prove the commission of an offense.
La.Code Crim.P. art. 165 provides:
While in the course of executing a search warrant, a peace officer may make photographs, lift fingerprints, seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.
In the present case, the officers testified that when they announced their presence at the Defendant’s trailer, they heard somebody running through the trailer and then heard a commode flush. Deputy Morphis testified that a flushing commode alerts them that someone is likely trying to dispose of contraband. The officers were in the course of executing their search warrant at the time this took place and the seizure was within the bounds of La.Code Crim.P. art. 165. Further, the search warrant gave the officers the explicit authority to search all outlying appurtenances, which would cover the sewer line attached to the trailer.
Thus, finding no merit in this assignment of error, we cannot conclude that the Defendant was denied effective assistance of counsel.
Assignment of ERROR Number 7
The Defendant alleges that the trial court erred when it allowed Detective Larry Morphis to testify as an expert and give opinion evidence. We find no merit in this assignment of error. A review of the record reveals that Deputy Morphis was not tendered as an expert witness but, rather, testified in his capacity as a deputy. The Defendant additionally argues that a lay witness may express an opinion only if the trial court determines that it is rationally based on the perception of the witness and that, in this case, the judge did .not make this determination. During the testimony of Deputy Morphis, the Defendant made no objections. Therefore, this assignment of 113error is not properly before this Court (La.Code Crim.P. art. 841) and cannot be considered.
Assignment of Error Number 8
The Defendant contends that the trial court erred by allowing the prosecutor to make reference to inadmissible other crimes evidence. He argues that the cumulative effect of the repeated references to inadmissible other crimes evidence in opening statement, trial testimony, and closing arguments, compounded with ineffective assistance of counsel precluded him from receiving a fair trial. Finding no merit in his argument, we affirm.
We note that none of the references to the other crimes evidence were objected to *717 by the defendant’s counsel during trial, except in the State’s closing argument. Albeit not properly placed on the record, we will review this assignment of error because it was raised in conjunction with the Defendant’s claims that his counsel’s failure to object deprived him of effective assistance of counsel.
The Defendant urges that the prosecutor inappropriately referred to other crimes evidence in his opening statement. Specifically, he alleges that the State was “out of line” when it attempted to depict him as a drug trafficker from the very start of trial. He argues that such evidence was inadmissible because the defendant was not charged with distribution of a controlled dangerous substance. Nevertheless, the record reflects that the Defendant was charged with possession of cocaine with intent to distribute and conspiracy to possess with intent to distribute. A review of the record reveals that the Defendant was convicted in January of 1997 of conspiracy to distribute crack cocaine. Therefore, the record does not support the Defendant’s contention.
Also, the Defendant argues that the prosecutor improperly solicited testimony from Rosie Wilford that Herbert said that the Defendant was a “big time dope dealer.” This clearly misstates the substance of Ms. Wilford’s testimony. Indeed, a review of the record shows that she testified that she told the Defendant that Herbert told her that Herbert was a “big time dope dealer” not that Herbert told her that the Defendant was a “big time dope dealer.”
Next, the Defendant asserts that the prosecutor improperly referred to other crimes evidence when he asked Ms. Simmons whether the occupant of the blue Cadillac requested to buy drugs from Lewis. A review of the record, however, reveals |! ¿that the question dealt with the conspiracy to possess with intent to distribute for which the Defendant was being tried, not with a prior crime or conviction.
The Defendant alleges that the prosecutor made improper remarks concerning other crimes evidence, which does not even exist, when referring to the Defendant as a “convicted drug dealer” and “convicted drug pedaler.” A review of the record shows that the Defendant acknowledged during cross examination that he had been convicted in January of 1997 of conspiracy to distribute crack cocaine.- Thus, the issue presents no merit.
Assignment of Error Number 9
The Defendant asserts that the prosecutor and the court combined to impair his constitutional right to present a defense and impaired his right to compel the attendance of a witness, Mr. Clyde A. Bernard Bowen. He believes that he was deprived of effective assistance of counsel when his counsel decided not to call Mr. Bowen back to the stand. We will review this assignment of error, as it was raised in conjunction with a claim of ineffective assistance of counsel.
The record shows that defense counsel planned to call Mr. Bowen to the stand as a defense witness to testify that he became aware that the police were looking for the Defendant and that he went to the Defendant’s trailer during the night to tip him. The State informed the court that Mr. Bowen could possibly be charged as a co-conspirator for obstruction of justice or as an accessory after the fact. The trial court decided that Mr. Bowen should be advised that he may incriminate himself in his testimony and that he had the right to plead the Fifth Amendment, remain silent, and consult with an attorney. Counsel for the Defendant rested its ease without calling Mr. Bowen back to the stand.
Both the United States Constitution and the Louisiana Constitution provide for the privilege against self-incrimination. U.S. Const., amend. V; art. I, § 16. State v. Larpenteur, 93-1424 (La.App. 4 Cir. 4/28/94); 636 So.2d 1103. “The language of the Fifth Amendment, applicable to the States by operation of the Fourteenth Amendment, is unequivocal and *718 without exception.” In Re Gault, 387 U.S. 1, 46, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967). It can be claimed in any type of proceeding, whether it is civil, criminal, administrative, judicial, investigatory, or adjudicatory. Id. It protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution 11fior which could lead to other evidence that might be so used. Id.; Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).
The privilege against self-incrimination allows an accused to refuse to take the stand, but generally a witness may only assert the privilege question by question. State v. Brown, 514 So.2d 99 (La.1987); State v. Larpenteur, 636 So.2d at 1106. However, the witness is not required to take the stand if it “is evident from the implication of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.” State v. Brown, 514 So.2d at 110.
In the case sub judice, during the opening statement, counsel for the defense stated that Mr. Bowen would testify that at 6:30 a.m., about an hour and ten minutes before the police arrived, he went to the trailer and told its occupants that the police had warrants and were coming. During the trial, the Defendant called Mr. Bowen to testify, at which time the following colloquy, in pertinent part, took place:
MR. DORROH: Your Honor, based on what I interpreted from the opening statement of the defense counsel, it is my understanding that Mr. Bowen is going to be called to testify that he became aware of the pending execution of the warrant and that he tipped off these defendants or the defendant and his late co-conspirator.
THE COURT: Okay.
MR. DORROH: The argument -
THE COURT: Whoa, let’s stop right here. Is that a fair interpretation of your remarks made in opening statement concerning this particular witness’ testimony?
MR. BRANAN: Part of his testimony, Your Honor.
THE COURT: But I mean, what the Assistant District Attorney has stated in addressing the Court as to this particular thing, what he stated was green (sic) from what you said in opening, correct?
MR. BRANAN: Yes, Your Honor.
THE COURT: Okay, Proceed.
MR. DORROH: Your Honor, if that’s going to be his testimony, I would suggest to the Court that he is either: a) a co-conspirator or b) that he is guilty of obstruction of justice or c) at minimum he is an accessory |1fiafter the fact by trying to help persons he knows has violated the law. He evaded detection and/or punishment.
The colloquy between the court and the-judge continued concerning each crime the prosecutor mentioned. The court then stated:
THE COURT: ... Now, just in an abundance of caution, I think that prior to the time when Mr. Bowens is called to testify, I think that he should be advised by law enforcement that it’s possible that he may incriminate himself, you know. And that should be done out of the presence of the jury.
Defense counsel chose not to call Mr. Bowen back to the stand after he was made aware of his Fifth Amendment rights and had been given time to' speak with an attorney. However, had Mr. Bowen been called back to the stand and taken the Fifth Amendment, the Defendant’s right to present a defense would not have been treated as being impaired. Accordingly, defense counsel’s decision not to call Mr. Bowen back to the stand did not amount to an ineffective representation.
*719 Assignment op Error Number 10
The Defendant argues' that the jury instructions were improper because they made reference to the crimes he was charged with, which dealt with double inchoate offenses. Additionally, he argues that the jury instruction regarding intent was improper. In his brief, he notes that defense counsel did not object. This claim is not raised in conjunction with allegations of ineffective assistance of counsel and, thus, is not properly before us (La. Code Crim.P. art. 841) and will not be considered.
Assignment op Error Number 11
This assignment of error is pretermitted by our decision to vacate the Defendant’s sentence and remand for re-sentencing.
Supplemental Assignment of Error Number 12
The Defendant contends that he was denied his Sixth Amendment right to effective assistance of counsel. He raises a number of issues in his supplemental | ^assignment that have already been dealt with in previous assignments. Nevertheless, we must address two issues concerning ineffective assistance of counsel, which we have not previously raised.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth two requirements that a defendant must satisfy in order to obtain the reversal of a conviction due to a counsel’s defective representation. The Supreme Court stated that:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 686, 104 S.Ct. 2052 (emphasis added).
First, the Defendant argues that his counsel failed to question Deputy Attaway about observing him when he came out of the bathroom. He notes that Deputy Att-away did not file a report and that Detective Morphis’ report did not include the fact that Attaway saw the Defendant coming out of the bathroom. A review of the record, however, shows that Detective Morphis’ report stated that “Sheriff Warwick advised Morphis that Jones had been observed leaving the rear bathroom where the commode was heard being flushed.” Deputy Attaway testified that upon entering the trailer, he went in the direction that he had heard foot steps running and found the Defendant coming out of the bathroom. The Defendant did not show how this failure to question Deputy Atta-way prejudiced him nor does he show how the failure to ask this question kept him from getting a fair .trial. This issue is without merit.
Second, the Defendant argues that his counsel was ineffective because Ms. Simmons made an uncounseled statement to the police that she was at the trailer at the time the officers entered and that the person she saw coming out of the bathroom was the deceased, Leonard Lewis, and not the Defendant. However, defense counsel never offered her uncoun-seled statement into evidence. Further, counsel failed to ask the question as to who she saw coming out of the bathroom.
|1SA review of the record shows that the Defendant’s contentions are inaccurate. Ms. Simmons “uncounseled” statement, referred to by the Defendant, does not state that when the police entered the trailer, Ms. Simmons saw Lewis coming out of the bathroom. Rather she stated, “that next *720 morning Leonard got up and went to the bathroom I heard the toilet flush.” During her testimony, Ms. Simmons stated that while she was at the trailer, Mr. Lewis used the back bathroom. She said that she and Mr. Lewis were in the middle bedroom when the police entered the trailer. Thus, Ms. Simmons testified that Mr. Lewis used the restroom sometime during the evening. In any case, the Defendant does not show how he was prejudiced or prevented from receiving a fair trial as a result of his counsel’s failure to submit Ms. Simmons’ statement.
Accordingly, we find that the defense counsel’s representation was not ineffective when he chose not to go into a line of questioning that would not benefit his client.
CONCLUSION
For the foregoing reasons, the Defendant’s conviction for possession of cocaine with intent to distribute is affirmed, but the underlying sentence is vacated and the case is remanded to the trial court for re-sentencing. Further, the Defendant’s conviction for conspiracy to possess cocaine with intent to distribute is reversed.
AFFIRMED AND REMANDED WITH INSTRUCTIONS IN PART, REVERSED IN PART.